**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **EEVEON DIECKMANN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-00792 |
| | ) | |
| **BRIDGESTONE RETAIL** | ) | |
| **OPERATIONS, LLC** | ) | **JURY TRIAL DEMANDED** |
| **d/b/a FIRESTONE COMPLETE AUTO** | ) | |
| **CARE,** | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Eeveon Dieckmann ("Plaintiff"), by and through undersigned counsel, and for his Complaint against Defendant Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto Care ("Defendant" or "Firestone"), states to this Honorable Court as follows:

## PARTIES

1. Plaintiff Eeveon Dieckmann is a male individual born in the year 2000, and was at all times relevant herein a resident and citizen of the State of Missouri.

2. Plaintiff is a member of the African American and Native American races and is of American national origin. Plaintiff is therefore a member of classes of persons protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").

3. Plaintiff was employed by Defendant beginning on or about 2021 as a Technician, and was employed at Defendant's Firestone Complete Auto Care store located at 8400 N.

Lindbergh Blvd., Florissant, St. Louis County, Missouri 63031 (the "Florissant Location") from on or about February 2025 until his termination on or about November 27, 2025.

4.      At all times relevant herein, Plaintiff was an "employee" of Defendant within the meaning of Title VII, 42 U.S.C. § 2000e(f).

5.      Defendant Bridgestone Retail Operations, LLC, doing business as Firestone Complete Auto Care, is a Delaware limited liability company authorized to do business in the State of Missouri, with its principal place of business in Nashville, Tennessee. Defendant operates the Florissant Location at which Plaintiff was employed.

6.      Defendant conducts continuous and systematic business in the State of Missouri, including through its retail location at the Florissant Location.

7.      Defendant employs 500 or more employees and is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

8.      The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

9.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3), because this action arises under the laws of the United States, specifically Title VII.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed within this judicial district, Plaintiff was employed by Defendant within this judicial district, and the relevant employment records are maintained or administered within this judicial district.

11.     Venue is properly laid in the Eastern Division of the United States District Court for the Eastern District of Missouri pursuant to Local Rule 2.07 because the cause of action accrued in St. Louis County, Missouri.

**ADMINISTRATIVE PROCEDURES**

12.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

13.     Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") and the Missouri Commission on Human Rights, designated as EEOC Charge No. 560-2025-03646 ("Plaintiff's Charge"), against Defendant on the bases of race, national origin, and retaliation in violation of Title VII and corresponding state anti-discrimination laws. A true and accurate copy of Plaintiff's Charge is attached hereto as Exhibit 1 and is incorporated by reference as if fully set forth herein.

14.     On or about February 18, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights, including a Notice of Right to Sue, with respect to Plaintiff's Charge. A true and accurate copy of the EEOC's Determination and Notice of Rights is attached hereto as Exhibit 2 and is incorporated by reference as if fully set forth herein.

15.     This Complaint is filed within ninety (90) days of Plaintiff's receipt of the EEOC's Determination and Notice of Rights, pursuant to 42 U.S.C. § 2000e-5(f)(1).

16.     Plaintiff's Charge provided the EEOC and the Missouri Commission on Human Rights sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial Complaint may be, and is, as broad as the scope of an EEOC or MCHR investigation that could reasonably be expected to have grown out of Plaintiff's

Charge, including conduct occurring before the earliest date of discrimination identified on the face of Plaintiff's Charge.

17.     Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action, and Plaintiff's Complaint is filed within all applicable statutes of limitations.

18.     Plaintiff reserves the right to amend this Complaint to add claims under the Missouri Human Rights Act, RSMo §§ 213.010 et seq., upon receipt of a Notice of Right to Sue from the Missouri Commission on Human Rights.

## GENERAL FACTUAL ALLEGATIONS

19.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

### *Plaintiff's Employment and Standing*

20.     Plaintiff was employed by Defendant beginning on or about 2021 as a Technician.

21.     At the time of his termination, Plaintiff was earning approximately $23.83 per hour as a full-time Technician.

22.     Defendant was aware of Plaintiff's membership in the protected classes of race and national origin at all times relevant herein.

23.     Throughout the relevant period, Plaintiff performed his duties as a Technician in good standing with Defendant, received satisfactory performance reviews, and was regarded as a competent and capable Technician.

### *The February 2025 Forced Transfer and Denial of Promotion*

24.     On or about February 2025, Defendant presented Plaintiff with the choice of either transferring to the Florissant Location or being terminated.

4

25. In connection with that choice, Defendant represented to Plaintiff that he would be permitted to interview for a management position at the Florissant Location.

26. Plaintiff interviewed for the management position at the Florissant Location in or about February 2025.

27. Plaintiff was qualified for the management position for which he interviewed.

28. Defendant denied Plaintiff the management position and instead offered Plaintiff only a Technician position at the Florissant Location.

29. When Plaintiff later spoke with the individual who had conducted the management interview, that individual stated that he had no recollection of having interviewed Plaintiff.

30. Upon information and belief, Defendant's stated reasons for denying Plaintiff the management position are false and pretextual, and Plaintiff's race and national origin were motivating factors in the denial.

31. After being denied the management position, Plaintiff asked Defendant for time to consider whether to accept the Technician role at the Florissant Location.

32. Without Plaintiff's agreement, Defendant transferred Plaintiff to the Florissant Location.

33. Upon information and belief, similarly situated employees outside Plaintiff's protected classes were afforded more deference and greater opportunity to negotiate transfer decisions than Plaintiff was afforded.

### The Florissant Location and Manager "Butch"

34. Plaintiff was one of a small number of African American employees at the Florissant Location.

5

35.     Upon arriving at the Florissant Location in or about February 2025, Plaintiff's direct supervisor was a manager known to Plaintiff as "Butch" ("Butch").

36.     Butch was openly hostile to Plaintiff. Among other things, Butch yelled at Plaintiff without cause on multiple occasions.

37.     Upon information and belief, Butch communicated to employees at the Florissant Location, including Plaintiff, that it was permissible to bring firearms to work.

38.     Butch's communications concerning the permissibility of bringing firearms to work created an unreasonably unsafe and hostile work environment for Plaintiff.

### *Plaintiff's Initiation of the EEOC Process in March 2025*

39.     In or about March 2025, Plaintiff initiated the EEOC complaint process with respect to the discriminatory and hostile conduct to which he was being subjected at the Florissant Location.

40.     Plaintiff communicated the fact of his initiation of the EEOC process within the workplace at the Florissant Location.

41.     Plaintiff's initiation of the EEOC process, and his communication of that fact within the workplace, constituted statutorily protected activity under Title VII.

### *The April 28, 2025 Firearm Incident*

42.     On or about April 28, 2025, while Plaintiff was performing his duties at the Florissant Location, a coworker at the Florissant Location made a gesture toward Plaintiff suggesting that the coworker was drawing a firearm on Plaintiff.

43.     Upon information and belief, the coworker who made the firearm-drawing gesture toward Plaintiff is not a member of Plaintiff's protected classes.

44.     Following Plaintiff's report of the firearm incident, Defendant conducted an investigation.

6

45.     As a result of Defendant's investigation of the firearm incident, Defendant terminated both Butch and the coworker who had made the firearm-drawing gesture toward Plaintiff.

### Plaintiff's Reassignment to Successor Managers and the Assignment of Joe

46.     Following Butch's termination, Defendant assigned Plaintiff to a successor manager whose identity is not yet known to Plaintiff (hereinafter, the "Successor Manager").

47.     During the Successor Manager's supervision of Plaintiff, the Successor Manager subjected Plaintiff to disproportionate and unwarranted surveillance and monitoring, including close monitoring of Plaintiff's work that was not applied to similarly-situated employees outside Plaintiff's protected classes.

48.     On or about May 2025, Defendant assigned an individual identified herein only as "Joe" ("Joe") to serve as Plaintiff's direct supervisor at the Florissant Location.

49.     Upon information and belief, Joe is a Caucasian male in his twenties.

50.     Joe served as Plaintiff's direct supervisor at all times from on or about May 2025 through Plaintiff's termination on November 27, 2025.

### Joe's Discriminatory Conduct – Disparate Pay

51.     During Joe's supervision, Plaintiff was required by Defendant to train Caucasian employees at the Florissant Location.

52.     Upon information and belief, the Caucasian employees whom Plaintiff was required to train were paid at hourly rates higher than the hourly rate Defendant paid to Plaintiff.

53.     Upon information and belief, the Caucasian employees whom Plaintiff was required to train were not more qualified than Plaintiff and, in fact, were dependent upon Plaintiff for training in order to perform their job duties.

7

54.     Plaintiff's race and national origin were motivating factors in Defendant's payment of higher wages to Caucasian comparators than to Plaintiff.

### *Joe's Discriminatory Conduct – Denial of Promotion, Raises, and Phantom Positions*

55.     During Joe's supervision, Plaintiff was repeatedly denied management positions at the Florissant Location for which he was qualified.

56.     When Plaintiff requested explanations for the denials of promotion, Defendant stated that certain certifications were required for the management positions in question.

57.     Upon information and belief, Caucasian employees at the Florissant Location who did not hold the certifications Defendant cited to Plaintiff were nevertheless considered for, and in some instances obtained, management positions for which Plaintiff was denied consideration.

58.     On at least one occasion, Defendant informed Plaintiff that a particular management position had been filled by a new hire from outside the Florissant Location.

59.     Upon information and belief, the new hire Defendant identified to Plaintiff as the person who had filled the management position never materialized in that role at the Florissant Location.

60.     Upon information and belief, Defendant's stated reasons for denying Plaintiff management positions — including the certifications rationale and the phantom-hire rationale — are false and pretextual.

61.     Plaintiff was promised raises by Defendant on more than one occasion during the relevant period. Those promised raises were never provided to Plaintiff.

62.     Upon information and belief, similarly situated Caucasian employees at the Florissant Location did not have promised raises withheld in the manner Defendant withheld promised raises from Plaintiff.

8

*Joe's Discriminatory Conduct – Hostile Work Environment and Differential Treatment*

63.     Early in the working relationship between Joe and Plaintiff, while Plaintiff was listening to rhythm-and-blues music at the Florissant Location, Joe approached Plaintiff and stated that he, Joe, "listens to black people music, too."

64.     Joe's statement reflected racial awareness on the part of Joe, a decision-maker with direct supervisory authority over Plaintiff.

65.     On one occasion, Joe reprimanded Plaintiff for not wearing safety goggles at a time when Plaintiff was not actively working on a vehicle and had his eyeglasses on his head.

66.     At the time Joe reprimanded Plaintiff for the safety-goggles issue, other employees at the Florissant Location outside Plaintiff's protected classes were simultaneously not in compliance with the same safety-goggles policy. Joe did not address those other employees' non-compliance.

67.     Joe's selective enforcement of Defendant's safety policies as against Plaintiff, while declining to enforce the same policies as against similarly-situated employees outside Plaintiff's protected classes, is probative of discriminatory animus and of pretext.

68.     Joe did not regularly assign work to Plaintiff in the manner that work was assigned to other employees at the Florissant Location. Instead, Plaintiff was required to affirmatively request work assignments from Joe in order to remain productive.

69.     Upon information and belief, similarly situated employees outside Plaintiff's protected classes were not required to affirmatively request work assignments in the manner Plaintiff was required to do.

9

70.     Plaintiff's requirement to affirmatively request work assignments adversely affected Plaintiff's compensation, productivity metrics, and reputation within the Florissant Location.

71.     Plaintiff brought to Joe's attention video evidence of other employees at the Florissant Location performing assigned work improperly or below specification.

72.     Joe disregarded the video evidence Plaintiff brought to his attention.

73.     Joe's selective enforcement of performance standards — holding Plaintiff to standards while disregarding documented performance failures by employees outside Plaintiff's protected classes — is probative of discriminatory animus and of pretext.

74.     The conduct described above, considered individually and in totality, was severe and pervasive, altered the terms, conditions, and privileges of Plaintiff's employment, and created an objectively and subjectively hostile and abusive work environment.

### *Plaintiff's Internal Complaints*

75.     Throughout the relevant period, Plaintiff repeatedly complained internally to Defendant's management and to other Firestone personnel about the discriminatory and harassing treatment to which he was being subjected at the Florissant Location.

76.     The most recent of Plaintiff's internal complaints prior to his termination occurred on or about September 2025.

77.     Plaintiff's internal complaints constituted statutorily protected activity under Title VII.

78.     Defendant's management, including Joe, was aware of Plaintiff's internal complaints and of Plaintiff's March 2025 initiation of the EEOC process.

10

***Plaintiff's November 27, 2025 Termination***

79.     On or about November 27, 2025, Defendant, acting through Joe, terminated Plaintiff's employment.

80.     Joe's stated reason for terminating Plaintiff's employment was that Plaintiff had not fully completed a job.

81.     Joe did not specify to Plaintiff what particular work or task on the unspecified job was alleged to have been left incomplete.

82.     Defendant's stated reason for terminating Plaintiff's employment is false and pretextual.

83.     The true reasons for Defendant's termination of Plaintiff's employment were Plaintiff's race, Plaintiff's national origin, and Plaintiff's prior engagement in statutorily protected activity, including his March 2025 initiation of the EEOC process and his repeated internal complaints culminating in the September 2025 complaint.

84.     Upon information and belief, similarly situated employees outside Plaintiff's protected classes, who had not engaged in statutorily protected activity, were not terminated by Defendant for purportedly leaving unspecified jobs incomplete.

85.     Plaintiff's termination occurred in close temporal proximity to his September 2025 internal complaint and within a year of his March 2025 initiation of the EEOC process.

### *Damages*

86.     As a direct and proximate result of Defendant's conduct, Plaintiff has been, and continues to be, deprived of income, including lost wages, benefits, and earning capacity, and other monetary and non-monetary benefits of employment.

87.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, mental anguish, anxiety, and loss of enjoyment of life. Plaintiff has sought professional therapy as a direct result of the conduct of Defendant alleged herein.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e-2(a))

88.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

89.     Plaintiff is a member of the African American and Native American races and is therefore a member of classes of persons protected by Title VII.

90.     Plaintiff was qualified for his position as a Technician at the Florissant Location and was qualified for the management positions for which he applied and was denied.

91.     Plaintiff suffered multiple adverse employment actions, including but not limited to the February 2025 denial of a management position, repeated subsequent denials of management positions, denial of promised raises, disparate compensation as compared with Caucasian comparators, disproportionate surveillance, selective enforcement of policies, pretextual discipline, and ultimately his November 27, 2025 termination.

92.     Plaintiff's race was a motivating factor in each of the adverse employment actions Defendant took against him.

93.     Defendant's discriminatory acts against Plaintiff because of his race include, but are not limited to: (a) denying Plaintiff the February 2025 management position for which he was qualified, under circumstances suggesting that the purported decision-maker had no recollection of having interviewed Plaintiff; (b) paying Caucasian Technicians whom Plaintiff trained at hourly

12

rates higher than the rate Defendant paid to Plaintiff; (c) denying Plaintiff subsequent management positions on the basis of certification requirements not equally applied to Caucasian comparators, and on the basis of phantom-hire rationales; (d) withholding promised raises from Plaintiff; (e) subjecting Plaintiff to disproportionate surveillance and to selective enforcement of safety and performance policies; and (f) terminating Plaintiff's employment for false and pretextual reasons.

94.     As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered the damages alleged in the General Factual Allegations above.

95.     Defendant's conduct was willful, wanton, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights, thereby justifying an award of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

96.     Plaintiff is entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Eeveon Dieckmann prays that this Honorable Court enter judgment in his favor and against Defendant Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto Care, and award Plaintiff: (a) back pay, including lost wages and benefits, with prejudgment interest; (b) front pay in lieu of reinstatement; (c) compensatory damages, including damages for emotional distress, humiliation, mental anguish, and loss of enjoyment of life; (d) punitive damages in an amount sufficient to punish Defendant and deter it and others from like conduct in the future; (e) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); (f) post-judgment interest at the maximum lawful rate; and (g) such other and further relief as this Court deems just and proper.

## COUNT II
### NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e-2(a))

97. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

98. Plaintiff is of American national origin and is a member of a class of persons protected by Title VII.

99. Plaintiff was qualified for his position as a Technician at the Florissant Location and was qualified for the management positions for which he applied and was denied.

100. Plaintiff suffered multiple adverse employment actions, including those identified in Count I above.

101. Plaintiff's national origin was a motivating factor in each of the adverse employment actions Defendant took against him.

102. As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered the damages alleged in the General Factual Allegations above.

103. Defendant's conduct was willful, wanton, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights, thereby justifying an award of punitive damages.

104. Plaintiff is entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Eeveon Dieckmann prays that this Honorable Court enter judgment in his favor and against Defendant Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto Care, and award Plaintiff the relief set forth in the WHEREFORE clause of Count I above.

14

## COUNT III
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e-2(a))

105.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

106.    Plaintiff is a member of the African American and Native American races and is of American national origin. Plaintiff is therefore a member of classes of persons protected by Title VII.

107.    During the course of Plaintiff's employment with Defendant at the Florissant Location, Plaintiff was subjected to severe and pervasive harassment and unwelcome conduct based on his race and national origin, including but not limited to: (a) the racially charged comment by Joe regarding rhythm-and-blues music; (b) selective enforcement of Defendant's safety policies; (c) disregard by Joe of documented performance failures by employees outside Plaintiff's protected classes while holding Plaintiff to a different standard; (d) refusal to assign work to Plaintiff in the manner work was assigned to other employees; (e) disproportionate surveillance and monitoring; and (f) hostile and intimidating supervisory conduct by Butch, including communications regarding the permissibility of bringing firearms to work.

108.    The harassment was sufficiently severe and pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and abusive.

109.    At the time the harassment occurred, and as a result of that harassment, Plaintiff subjectively believed his work environment to be hostile and abusive, and the harassment adversely affected the terms, conditions, and privileges of Plaintiff's employment.

110.    Defendant knew or should have known of the harassing conduct because Plaintiff complained internally to Defendant's management about the conduct on multiple occasions,

15

including the September 2025 complaint, and because Plaintiff initiated the EEOC process in March 2025 and communicated that fact within the workplace.

111.    Defendant failed to exercise reasonable care to prevent and promptly correct the harassing conduct, including by failing to make good-faith efforts to establish and enforce policies preventing illegal discrimination and harassment, by failing to properly train and inform Defendant's supervisors and employees concerning their duties and obligations under Title VII, and by failing to investigate and remedy Plaintiff's internal complaints of discrimination and harassment.

112.    Plaintiff's race and national origin were motivating factors in the harassing conduct to which Plaintiff was subjected.

113.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered the damages alleged in the General Factual Allegations above.

114.    Defendant's conduct was willful, wanton, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights, thereby justifying an award of punitive damages.

115.    Plaintiff is entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Eeveon Dieckmann prays that this Honorable Court enter judgment in his favor and against Defendant Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto Care, and award Plaintiff the relief set forth in the WHEREFORE clause of Count I above.

16

**COUNT IV**
**RETALIATION IN VIOLATION OF TITLE VII**
**(42 U.S.C. § 2000e-3(a))**

116.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

117.   Title VII prohibits an employer from discriminating against an employee because the employee has opposed any practice made unlawful by Title VII, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

118.   Plaintiff engaged in statutorily protected activity by, among other things: (a) initiating the EEOC complaint process in or about March 2025 and communicating that fact within the workplace; (b) opposing race and national origin discrimination and harassment by repeatedly complaining internally to Defendant's management, including the September 2025 complaint; and (c) filing his formal Charge of Discrimination with the EEOC and the Missouri Commission on Human Rights.

119.   Plaintiff held a reasonable, good-faith belief that the conduct he opposed and reported was unlawful under Title VII.

120.   Defendant's management, including Joe, was aware of Plaintiff's protected activity.

121.   As a result of engaging in protected activity, Plaintiff suffered adverse employment actions, including but not limited to: (a) heightened and unwarranted scrutiny and surveillance; (b) pretextual discipline; (c) continued denials of promotion and raise opportunities; (d) continued harassment; and (e) the November 27, 2025 termination of his employment.

122.    Plaintiff's November 27, 2025 termination occurred in close temporal proximity to Plaintiff's September 2025 internal complaint and within a year of his March 2025 initiation of the EEOC process.

123.    Defendant's stated reasons for Plaintiff's termination, including the vague and unspecified "incomplete job" rationale articulated by Joe, are false and pretextual.

124.    Similarly-situated employees who did not engage in protected activity were not subjected to comparable adverse employment actions.

125.    Plaintiff's protected activity was a but-for cause of the adverse employment actions Defendant took against him, including his termination.

126.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered the damages alleged in the General Factual Allegations above.

127.    Defendant's conduct was willful, wanton, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights, thereby justifying an award of punitive damages.

128.    Plaintiff is entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Eeveon Dieckmann prays that this Honorable Court enter judgment in his favor and against Defendant Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto Care, and award Plaintiff the relief set forth in the WHEREFORE clause of Count I above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Eeveon Dieckmann respectfully prays that this Honorable Court enter judgment in his favor and against Defendant Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto Care, and award Plaintiff the following relief:

(a) Front in lieu of reinstatement and back pay, including lost wages and benefits, with prejudgment interest;

(b) Compensatory damages, including damages for emotional distress, humiliation, mental anguish, and loss of enjoyment of life;

(c) Punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future;

(d) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

(e) Post-judgment interest at the maximum lawful rate; and

(f) Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Date:   May 19, 2026                    Respectfully submitted,

**DONNER APPLEWHITE, ATTORNEYS AT LAW**

By:   */s/ Thomas R. Applewhite*
        Thomas R. Applewhite, #64437
        Christopher J. Herman, #75841
        5205 Hampton Avenue
        St. Louis, Missouri 63109
        Phone:        (314) 293-3526
        Facsimile:    (888) 785-4461
        Email:        tom.applewhite@da-lawfirm.com
                        chris.herman@da-lawfirm.com

*Attorneys for Plaintiff*

19